IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:11-CR-134 |
| | ) | (PHILLIPS/GUYTON) |
| QUINTON LEE BINFORD, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the Court on the defendant's Motion to Suppress Search of Defendant's Backpack. [Doc. 25]. This Motion was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on June 14, 2012. Kelly Norris, Assistant United States Attorney, was present representing the Government. Attorney Christopher Oldham was present representing the defendant, Quinton Lee Binford ("Binford"). The defendant was also present. At the conclusion of the hearing, the Court granted the defendant's request for time until June 22, 2012, within which to file a supplemental brief. The Government was given time to July 6, 2012, to file a response. Neither party filed a post-hearing brief. The Court took the suppression motion and related filings under advisement on July 9, 2012.

The defendant has been indicted [Doc. 1] on a single count of being a felon in possession of a firearm on October 8, 2011. Binford has moved to suppress all items of evidence seized from his backpack on that date, including the firearm which is the basis for the Indictment, alleging that the

1

search was unreasonable and occurred prior to Binford's arrest. [Doc. 25]. In response [Doc. 29], the Government alleges that police approached Binford in a public park and questioned him about an alleged threat with a firearm made earlier in the day. Binford admitted ownership of the backpack and then consented to its search. The Government also states that based on police department policies, an inventory search of the backpack would have occurred anyway, following Binford's arrest on the threat with a firearm charge.

## I. FACTS

The Government's first witness was Sergeant Mike Newman ("Newman"), an officer with the Loudon City Police Department ("LCPD"). Newman testified that he had been a LCPD Officer for eighteen years and that his job title is sergeant.

Newman testified that on October 8, 2011, he was working the evening shift. He received a dispatch call from 503 Ferry Street, in Loudon, that a man had threatened another man with a gun. Newman went to the scene, spoke with the victim, and received a description of the man who he alleged had threatened him with a gun. The victim said that when he called 911, the perpetrator left.

The victim described the perpetrator as a black male, 6'1"-6'2", wearing a white t-shirt and khaki pants, carrying a black and white backpack. The victim told Newman that the suspect went by the name "Q".

Newman testified that he then drove around the area and ended up at the public park, commonly called Jiffy Park. This was four blocks from the victim's house. Newman said he was at the park within fifteen minutes of getting the initial dispatch call. When Newman drove into the park, he saw Binford, matching the description given by the victim. Moreover, Binford was the only black male in the park.

2

Upon making contact with Binford, Newman placed him in handcuffs for officer safety, due to the report that Binford had a gun.

Newman then explained to Binford that Newman was investigating an alleged threat with a gun. According to Newman, Binford denied the allegation and asserted that the police were just harassing him. At about that time, LCPD Officer Martin Ward ("Ward"), arrived on scene to back up Newman.

Newman patted down Binford. No guns were found on Binford's person. Binford then claimed ownership of his black and white backpack. Newman testified that he asked Binford for consent to search it. According to Newman, Binford responded "Yes, but you won't find anything but clothing in it."

When Newman asked for consent to search the backpack, he was not yelling or pointing firearms at Binford. Newman said that Binford was not at all confused as to what Newman was asking him for permission to do.

Newman testified that he searched the backpack, in the presence of Binford. He said that he found clothing items, and at the bottom of the backpack, a loaded Hi-Point .9mm handgun. A photo of the gun was admitted as Exhibit 1.

Newman then identified a video recording of the search of the backpack, taken by a camera in a LCPD cruiser. The video was admitted as Exhibit 2. Newman testified that the video shows Binford actually telling the officers several times to go ahead and search the backpack; all they would find would be clothes. The video shows the subject firearm being pulled from the bottom of the backpack.

Newman testified that even if a gun had not been found, Binford would have been arrested.[1] After his arrest, Binford's personal items, including the backpack, would have been taken to the jail. There an inventory search was required by police department policy.

On cross-examination, Newman testified that after he handcuffed Binford, Binford was not a threat to officer safety. Still, Newman asked for permission to search the backpack, because there was a report of a gun in the possession of Binford, and it had not been located on his person.

The Government's second witness was Martin Ward ("Ward"), an officer with the LCPD. Ward testified that he has been with LCPD for five years and that his job title is patrolman.

Ward testified that on October 8, 2011, he responded to a call of a man threatening another man with a gun at 503 Ferry Street, Loudon. Ward spoke with the victim and got a description of the perpetrator. Ward left 503 Ferry Street when he got a call that Sergeant Newman had located a person matching the description of the suspect in Jiffy Park.

When Ward arrived at Jiffy Park, Binford was handcuffed. Ward testified that Newman asked Binford for consent to search his backpack, and that Binford gave consent, saying something to the effect of "go ahead, there is nothing in it but clothes." Ward testified that clothes were found in the backpack, along with a loaded firearm.

Ward then testified as to the policy of the LCPD regarding inventory searches of arrestee's property. He said that Binford would have been arrested on the threatening charge, even if the weapon had not been found. He said that the backpack would have been searched after Binford was arrested, before it could be allowed into the jail.

---

[1] The victim came to the park and identified Binford as the person who threatened him with a firearm.

## II. ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. Const. amend IV. The Defendant contends that the firearm, which police seized in a public park on October 8, 2011, must be suppressed because it is the fruit of the officers' illegal search of the Defendant's backpack. Binford broadly argues that the search was unreasonable under the Fourth Amendment. The Government contends that the firearm was recovered pursuant to a valid consent to search the Defendant's backpack. The Government also argues that the firearm would have been discovered in any event during an inventory search at the jail.

The Court must first decide whether the officers in the present case had consent to search Binford's backpack. An officer may lawfully approach a person in a public place and ask questions of the individual as long as the person is willing to talk. See United States v. Drayton, 536 U.S. 194, 200 (2002).

"It is well-established that a warrantless search by law enforcement officials will be upheld if a detainee has voluntarily consented to the search." United States v. Van Shutters, 163 F.3d 331, 335 (6th Cir. 1998) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219, (1973)). The Government bears the burden of proving that the consent was voluntary and not "the result of coercion, duress, or submission to a claim of authority" based upon the totality of the circumstances. Id. The Government must make this showing through "clear and positive testimony" and to a preponderance of the evidence. United States v. Worley, 193 F.3d 380, 385 (6th Cir. 1999). In determining whether consent was voluntary, the Court should consider the defendant's age, intelligence, and education level; if the defendant understood he had the right to decline to consent; if the defendant appreciated his constitutional rights; the nature and duration of the detention; and

5

whether the officers used punitive or coercive conduct. Id. at 386.

In this case, Binford matched the description given by the victim of a man who had threatened the victim with a gun just minutes before. The testimony of Newman and Ward established that consent to search the backpack was requested in a non-threatening manner. Neither officer had a gun drawn or shouted at Binford. The officers did not physically coerce Binford. The testimony of Newman and Ward further establishes that Binford unequivocally gave consent to search the backpack. The Court finds that the testimony of Newman and Ward is fully credible. Further, the video, Exhibit 2, supports their testimony.

In the present case, the Court finds that although there is no testimony as to the defendant's age, intelligence, or education level, the defendant certainly did not appear intimidated into consenting. The Court also finds that although there is no evidence that the officers told the defendant that he could refuse to consent to a search, such information is not the "*sine qua non* of an effective consent" but, instead, is merely one of the factors to be considered. See Schneckloth, 412 U.S. at 227. Looking at the totality of the circumstances, the Court finds that the defendant voluntarily consented to the search.

For all of the above stated reasons, the Court finds that Binford validly and voluntarily consented to the search of his backpack. On that basis, the Court recommends that the Defendant's motion to suppress be denied.

The finding of a consent search is dispositive of the Defendant's Motion to Suppress. Accordingly, the Court need not address the Government's alternative ground for denial of the Motion, that is, the inventory search policy of the LCPD.

6

**CONCLUSION**

After carefully considering the evidence introduced during the course of the evidentiary hearing, and after reviewing the relevant legal authorities, it is clear that there is no basis to suppress any evidence seized in this case. For the reasons set forth herein, it is **RECOMMENDED** that defendant's Motion to Suppress Evidence Search of Defendant's Backpack [Doc. 25] be **DENIED**.[2]

Respectfully submitted,

      s/ H. Bruce Guyton
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).